# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER A. MUSTARD,                          Civil Action No. 21-cv-163
SUSANNE CERAGIOLI, PAULINE
WILDER, WILLIAM CURTIS WILDER,
JEFFREY CURTIS WILDER, and
KRISTENE WILDER

     Plaintiffs,

v.

THE ISLAMIC REPUBLIC OF IRAN,
     The Ministry of Foreign Affairs
     c/o Mohammad Javad Zarif
     Imam Khomeini Square
     Imam Khomeini Street
     Tehran, Iran

     Defendant.

_____/

## COMPLAINT

Plaintiffs bring this case against Defendant, the Islamic Republic of Iran ("Iran"), pursuant

to the Foreign Sovereign Immunities Act, 28 U.S.C. Section 1605A and applicable state and

common for damages arising out of the June 25, 1996 terrorist attack on the Khobar Towers

complex in Dhahran, Saudi Arabia. On that day, Hizballah terrorists detonated a 5,000-pound

truck bomb outside the complex, which housed United States military personnel. The blast from

this bomb sheared off the entire face of one building of the Khobar Towers complex and

shattered windows up to a half mile away. The blast killed nineteen American service members

and injured many others. The injured victims included Plaintiff, Cristopher A. Mustard; Denny

Prier, the brother of Plaintiff, Susanne Ceragioli; and Jennifer Scheidel, the daughter and sister of

Plaintiffs Pauline, William Curtis, Jeffrey Curtis, and Kristene Wilder. Plaintiffs seek a judgment

against Iran for compensatory damages, punitive damages, statutory treble damages, attorney's fees and costs. Plaintiffs allege as follows:

## I.  JURISDICTION and VENUE

1.      This Court has jurisdiction over this matter and over Defendants pursuant to 28 U.S.C. Sections 1330-1332 and 1605A.

2.      This District is the proper venue pursuant to 28 U.S.C. Section 1391(f)(4).

## II.  THE PARTIES

### A.  Plaintiff, Christopher Mustard.

3.      Plaintiff Christopher Mustard is is, and at all relevant times was, a United States national. In 1996, was serving a tour of duty at the U.S. Air Force base in Dhahran, Saudi Arabia. On June 25, 1996 Mr. Mustard was housed at the Khobar Towers complex. When the explosion hit, he was inside his residential quarters. The blast blew out a glass door sending shards of glass throughout the room and causing several lacerations on Mustard's body. Mustard was initially unable to move from shock. His supervisor, who was also injured pulled Mustard onto his feet and Mustard then supported the supervisor as the two evacuated the building. As a result of the attack, Mustard suffered from memory loss and post-traumatic stress disorder. To this day, he suffers from nightmares, cannot tolerate loud noises, and has recurring nightmares. He avoids crowed places like movie theaters and has turned down lucrative job offers abroad due to his fear of being in another terrorist attack.

### B.  Plaintiff Susanne Ceragioli.

4.      Plaintiff, Susanne Ceragioli, is a United States national and a resident of Jacksonville, Florida.

5.      Susanne is the older half-sister of Denny Prier, a United States national, who was serving a tour of duty in 1996 and was housed at the Khobar Towers Complex at the time of the explosion. Denny Prier was physically and emotionally injured in the bombing attack. *See Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020). Susanne Ceragioli has suffered severe mental anguish and extreme emotional pain and suffering.

6.      Susanne was born in Germany. Her mother was a German citizen, and her biological father was a United States citizen serving in the United States air force in Germany. Susanne's mother later married Thomas Prier, who was also a United State citizen serving in the United States air force in Germany. Thomas Prier adopted Susanne when she was two years old.

7.      Susanne resided with her family in Germany until she was 18 years old, when the family moved to Florida.

8.      On the day of the attack, Susanne Ceragioli was at work when her mother called her to tell her that the Khobar Towers had been bombed. She immediately left work and went to her parents' house where the family anxiously watched the news and awaited news of Denny's fate. The entire family was distraught, and Susanne recalls her father, a 26-year military veteran, breaking down in tears.

9.      Growing up and prior to the attack, Susanne had been very close to her brother. As children, she baby sat for Denny and their younger sister, and Denny protected her from other children who sometimes teased her because her skin color was darker than that of her siblings.

10.      Susanne was extremely proud of Denny when he joined the military. She loved him dearly and felt terrible distress as a result of his injuries.

11.      Susanne is still close with her brother and speaks with him regularly. But she sees that he has changed. He cannot talk about his experience in the bombing and often closes up in

conversations. It distresses Susanne to know that her brother continues to grieve for his friends who were killed in the attack and that he suffers from PTSD and survivor' guilt.

**C. Wilder Family Plaintiffs.**

12.     Jennifer Scheidel is, and was at all relevant times, a United States national. She resided with her then-husband, Steven Aceto, at the Khobar Towers complex at the time of the attack. Both were servicemembers..When the blast hit, Jennifer was working at a munitions facility at the Air Base.  She heard the explosion, felt the ground shake, and immediately feared that another bomb would be detonated and feared for her own safety and that of her husband. The trauma of the attack left Jennifer Scheidel a changed person. *See Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020)

13.     Plaintiff, Pauline Wilder, is the mother of Jennifer Scheidel. She is, and at all relevant times was, a United States national. Pauline Wilder has suffered severe mental anguish and extreme emotional pain and suffering.

14.     At some point after the bombing, Jennifer called Pauline, and Pauline immediately heard the horror in her daughter's voice. Jennifer said something incoherent about a bomb and then the line went dead. Pauline Wilder experienced great anxiety and concern when she first heard of the attack and did not know the condition of Jennifer or her son-in-law.

15.     She had been very close with her daughter before the attack. But when Jennifer returned home from Saudi Arabia, Pauline says, "she wasn't herself." Pauline suffered helplessly as her daughter engaged in self-destructive behavior and almost committed suicide. Pauline suffers from extreme distress as a result of her daughter's severe emotional injuries. \

16.     Plaintiff, William Wilder is the father of Jennifer Scheidel. He is, and at all relevant times was, a United States national. William Wilder has suffered severe mental anguish and extreme emotional pain and suffering.

17.     Like his wife, William also experienced great anxiety and concern when he first heard of the attack.

18.     William Wilder had been very close with her daughter before the attack. But after her return from Saudi Arabia, William and Jennifer could not get along. Like his wife, Pauline, William suffered from Jennifer's self-destructive behavior.

19.     William Wilder is a veteran, having served during the Vietnam War. During the Vietnam War, William was exposed to agent orange and continues to suffer from Post-Traumatic Stress Disorder. The distress of experiencing his daughter's emotional injuries and destructive conduct has been exacerbated by his own PTSD and other health issues.

20.     Plaintiff, Kristene Wilder, is the younger sister of Jennifer Scheidel. She is, and at all relevant times was, a United States national. Kristene Wilder has suffered severe mental anguish and extreme emotional pain and suffering.

21.     As children, Kristene looked up to her sister and counted on Jennifer for guidance and advice. The sisters shared a close relationship, which matured during the last year before Jennifer deployed overseas.

22.     At the time of the attack, Kristene felt detached from reality. She could not conceive of the possibility that Jennifer had been injured or killed.  Unable to process the possibility that Jennifer could have been killed, Kristene disconnected from the rest of the family.

23.     When Jennifer returned to the United States, Kristene witnessed her older sister descend into alcoholism and emotional outbursts directed at Jennifer's then-husband as well as the rest of the family. Kristene tried in vain to reassure her sister that good things in life were still possible.

24.     Jennifer became suicidal and manipulative. She would blame Kristene for her troubles and the more Kristene tried to help, the more she became the object of Jennifer's erratic behavior. Jennifer would scream and yell obscenities at Kristene.  The sister's relationship was destroyed. And Kristene says that Jennifer's erratic behavior shattered the family. In the last couple of years have the sisters have begun to reconcile.

25.     Plaintiff, Jeffrey Wilder, is the brother of Jennifer Scheidel. He is, and at all relevant times was, a United States national. Jeffrey Wilder has suffered severe mental anguish and extreme emotional pain and suffering.

26.     Growing up with Jennifer, Jeff and his sister shared common friends and the two would spend time together as friends and not only as siblings. When Jennifer married Steve Aceto, Jeff was Steve's best man.

27.     When Jeff learned of the attack, he was distraught. He wondered whether he would ever see his sister or brother-in-law again. He says that he never saw pictures or video of the bombing, but he has a vivid picture of it in his mind; he had nightmares and constantly thought about the bombing.

28.     Jeff confirms that the Khobar Towers bombing caused his sister's life to spiral out of control and cause his close relationship with her to unravel. He lives in severe emotional pain caused by the effects of PTSD on his sister. Jeff Wilder mourns the loss of the person Jennifer

was before the attack, and he struggles to maintain a relationship with the person Jennifer has become.

### D. Defendant Islamic Republic of Iran.

29.     Defendant the Islamic Republic of Iran (hereinafter also referred to as "Iran"), is a foreign state that, since January 19, 1984, has been designated a state sponsor of international terrorism within the meaning of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) and section 40 of the Arms Export Control Act, 22 U.S.C. § 2780. The Islamic Republic of Iran provides material support and resources to Hizballah, a United States government designated Foreign Terrorist Organization ("FTO"). At all times relevant hereto, and in particular, in the time preceding and during the bombing attack, Iran provided Hizballah with funding, direction, and training for its terrorist activities.

30.     Iran conspired with, and aided and abetted Hizballah in carrying out the terrorist attack on the Khobar Towers. Specifically, Iran, through its agents, including those in the Iranian Ministry of Information and Security (MOIS), and Iranian Islamic Revolutionary Guard Corp (IRGC), participated in the planning of the attack, and provided material support and resources. Iran provided money, training and travel documents to Hizballah members to facilitate the attack.

31.     The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under the predecessor statute to 28 USC Section 1605A, 28 U.S.C. § 1605(a)(7), to victims of state sponsored terrorism for the acts of defendant Hizballah in cases before this Court. *See e.g.*, *Anderson v. The Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. The Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998).

Iran has also been found liable for the same bombing attack at issue here. *See e.g.*, *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010); *Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020).

32.     Iran is collaterally estopped in this action from denying that it is liable for the acts and actions of Hizballah in carrying out the terrorist attack at issue here.

33.     Iran sometimes acted through its political subdivision and instrumentality the Iranian Islamic Revolutionary Guard Corps, (hereinafter referred to as "IRGC"), a branch of the Islamic Republic of Iran. The IRGC is one of the most powerful organizations in Iran, functioning as an intelligence organization, both within and outside the country of Iran and exerting considerable influence on the governmental policies of Iran. The IRGC has become a powerful military instrument for Iran and the Islamic fundamentalist revolution and employs terrorism to export of Islamic fundamentalism throughout the world.

34.     The IRGC is the arm through which Iran prepared and oversaw the actions relating to the bomb attack on the Khobar Towers. The IRGC, as an agent and political arm of the Islamic Republic of Iran, performed acts within the scope of its agency, each within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to defendant Hizballah for its terrorist activities in Saudi Arabia that caused the injuries to plaintiffs herein. The IRGC has been found to be liable as a foreign state supporting international terrorism under former 28 U.S.C. § 1605(a)(7) to victims of state sponsored terrorism for the acts and actions of defendant Hizballah. *See e.g. Higgins v. The Islamic Republic of Iran*, Civ. No. 99-377(RCL) (D.D.C. Sept. 21, 2000); *Surette v. Islamic Republic of Iran*, Case No. 01-570 (D.D.C. November 1, 2002). Moreover, the IRGC has been

found liable for the same terrorist attack at issue here. *See e.g, Estate of Heiser*, 466 F. Supp. 2d

229; *Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020),

35.     Hizballah was formed by Iran utilizing IRGC assets to export Islamic

fundamentalism throughout the world through acts of terrorism, including, but not limited to, the

actions relating to the June 25, 1996 bombing attack at the Khobar Towers in Dhahran, Saudi

Arabia. Hizballah, acting as an agent of the Islamic Republic of Iran and of IRGC, performed

acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, that caused the

injuries to the Plaintiffs herein.

### III.     STATEMENT OF FACTS

36.     Several years before the terrorist attack at issue here, the Islamic Republic of Iran

began a program of carefully planned acts of terrorism designed to destabilize governments in

the Middle East and to export Islamic fundamentalism. Its principal agents, political

subdivisions, and arms in this regard were the Iranian Ministry of Information and Security

("MOIS") and the IRGC.

37.     In the early 1980's Iran, through MOIS and the IRGC, established Hizballah in

Lebanon as a terrorist organization employing tactics such as kidnapping, torture and murder.

The MOIS and the IRGC provided funding, training, and equipment to Hizballah enabling it to

pursue and achieve its terrorist mission. By the early 1990's, the activities of Hizballah were no

longer limited to Lebanon. Its operatives were operating in a number of countries utilizing the

tactics taught to them in Iran and the Bekaa Valley in Lebanon at facilities established, operated

and supported by Iran.

38.     In this period, the presence of United States personnel in Saudi Arabia was

viewed by the Iranian government as supportive of a Saudi monarchy, which was closely allied

with Western governments. In Iran's view, a large-scale terrorist operation designed to kill Americans would expose the corruption of the house of Al-Saud and result in a revolution and the establishment of an Islamic Republic in Saudi Arabia. In 1995, Iran, acting through MOIS, IRGC, Hizballah, and Osama bin Laden, began preparations for a bombing of a target associated with American interests. Hizballah operatives began scouting potential Arabian targets. With Iran's support, small shipments of explosives were smuggled into Saudi Arabia and stored. And an elaborate professional intelligence network was established to carry out the mission.

39.     By June 1996, the bomb components had arrived in Saudi Arabia, including high explosives, incendiary materials, and sophisticated fuses as well as the tools for the bomb assembly. Iran selected and approved a target in Dhahran to be detonated by Hizballah agents.

40.     On the evening of June 25, 1996, two Hizballah terrorists drove a stolen Mercedes Benz tanker truck containing the bomb into the Saudi compound that surrounded the American sector at the al- Khobar military area near Dhahran. They parked the truck 80-100 feet from a building which housed the American personnel. The men drove away in a waiting getaway vehicle. A few minutes later, the bomb exploded. The explosion killed dozens of persons including nineteen American servicemen. Hundreds of others suffered personal injury and great emotional distress as a result of the terrorist explosion. For most, the psychological wounds continue to this day.

41.     Plaintiff, Christopher Mustard, who was present at the time suffered personal injury and great emotional distress as a result of the terrorist explosion. The psychological wounds continue to this day. Plaintiffs, Susanne Ceragioli, and Pauline, William, Kristene, and Jeffrey Wilder, who are close family members of Denny Prier and Jennifer Scheidel,

respectively, suffered great emotional distress when they learned of the attack on their loved ones and in the years afterwards, as well as loss of consortium and solatium damages.

## COUNT I

### CAUSE OF ACTION FOR DAMAGES
### UNDER 28 U.S.C. SECTION 1605A(c)

42.     Plaintiff repeats and incorporates the allegations above as though fully set forth herein.

43.     Defendant provided material support and resources to Hizballah, within the meaning of 28 U.S.C. Section 1605A(a), which caused, enabled, and facilitated the terrorist attack at the Khobar Towers.

44.     That terrorist attack, which resulted in nineteen deaths, was an extrajudicial killing within the meaning of Section 1605A and caused great personal injury and damage to many others including the Plaintiffs herein.

45.     Iran's agencies, instrumentalities, officials and other agents provided the material support and resources that caused and facilitated the terrorist bombing and conspired with Hizballah to carry out the terrorist bombing, all within the scope of their agency, office, or employment.

46.     Hizballah is an agent of Iran and it carried out the terrorist bombing while acting within the scope of its agency.

47.     Plaintiffs herein were injured in the attack or are immediate family members of those injured in the attack. The terrorist bombing caused the Plaintiffs to suffer severe harm, including personal injury, mental anguish, pain and suffering, severe emotional distress, loss of companionship and society, loss of consortium, and pecuniary loss.

48.    The terrorist bombing and the harm and injuries suffered by the Plaintiffs were directly and proximately caused by Iran's conduct described herein.

49.    The conduct of Iran was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

50.    Iran is therefore liable for the full amount of Plaintiff's' damages and for punitive damages under 28 U.S.C. 1605A(c), jointly and severally.

## COUNT II

### Intentional Infliction of Emotional Distress
### under the Laws of Florida and the District of Columbia
### (for Plaintiff Susanne Ceragioli)

51.    Plaintiff Susanne Ceragioli realleges and incorporates the allegations above as though fully set forth herein.

52.    Iran conspired with Hizballah to carry out the terrorist bombing.

53.    Defendant Iran's conduct and that of its agents and co-conspirators alleged herein was deliberate or reckless and Iran intended or knew or should have known that its conduct would likely cause emotional distress. Iran's conduct terrorized the victims, and their families, including Ms. Ceragioli.

54.    Iran's conduct and that of its agents and co-conspirators was outrageous and went beyond all bounds of decency and is regarded as atrocious and utterly intolerable in civilized society.

55.    Iran's conduct and that of its agents and co-conspirators caused Plaintiff Susanne Ceragioli to suffer severe emotional distress.

56.    Plaintiff Susanne Ceragioli is entitled to compensatory and punitive damages in amounts to be ascertained at trial.

**COUNT III**

**Civil Remedy for Terrorism or Facilitating or Furthering Terrorism
Under Florida Statute § 772.13
(for Plaintiff Susanne Ceragioli)**

57.     Plaintiff Susanne Ceragioli realleges and incorporates by reference all allegations above as if fully set forth herein.

58.     Iran's conduct described above constituted an act of terrorism, as defined in Florida Statute § 775.30.

59.     Iran's conduct described above is activity that facilitated or furthered an act of terrorism that would be subject to enhanced penalties under Florida Statute § 775.31.

60.     Iran conspired with Hizballah to carry out the terrorist bombing.

61.     Iran's conduct described herein injured Plaintiff, Susanne Ceragioli and caused her to suffer severe emotional distress, extreme mental anguish, pain and suffering, loss of solatium, loss of society and companionship of her brother, Denny Prier.

62.     Plaintiff Susanne Ceragioli is entitled to threefold her actual damages and reasonable attorney's fees and court costs in amounts to be ascertained at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court grant judgment in theirs favor and against Defendant Iran and grant Plaintiffs:

A.     Compensatory damages as against Defendant in amounts to be determined by the Court;

B.     Punitive Damages in favor of Plaintiffs as against Defendant in an amount to be determined by the Court;

C.     Threefold the actual damages suffered by Plaintiff, Susanne Ceragioli;

C.     Reasonable costs and expenses.

13

D.    Reasonable attorneys' fees; and

E.    Such other and further relief as the Court may determine to be just and equitable in the circumstances.

Dated: January 19, 2021

Respectfully submitted,


By   /s/ Asher Perlin          _
     Asher Perlin (#FL0006)
     Law Office of Asher Perlin
     4600 Sheridan Street, Suite 303
     Hollywood, Florida 33021
     Tel: (786) 233-7164
     asher@asherpelin.com

     *Counsel for Plaintiff*