UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER A. MUSTARD, et al.,

  Plaintiffs,

v.

THE ISLAMIC REPUBLIC OF IRAN,

  Defendant.

_____/

Civil Action No. 21-cv-163 (BAH)

**SUPPLEMENTAL MEMORANDUM**

Pursuant to the Court's January 12, 2023 Minute Order, Plaintiffs file this Supplemental Memorandum in support of their Motion for Entry of Default Judgment and to Take Judicial Notice of Evidence in Prior Related Cases.

**INTRODUCTION**

The Court's January 12, 2023 Minute Order directed the Plaintiffs to file a supplemental memorandum addressing four issues:

(1) whether this Court has jurisdiction to grant any type of relief under Count 3 of the Complaint, claiming enforcement of a Florida state law in determining damages, and whether Count 3 is more appropriately brought and enforced in a Florida court; (2) whether District of Columbia choice-of-law rules apply in determining whether to grant relief for Count 3; (3) whether a choice-of-law analysis is required to apply Count 2 for intentional infliction of emotional distress "under the Laws of Florida," Complaint at 12; and (4) whether Count 1, which merely alleges a private right of action under the terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), may also serve as the basis

for any relief under tort law since five of the six plaintiffs asserted no tort claim through which they may recover damages, as permitted by the FSIA's private right of action.

As discussed below, Plaintiffs believe that resolution of the fourth issue (sufficiency of pleading under the FSIA's statutory cause of action in Count I) could render resolution of the other issues unnecessary. And, if the Court disagrees, Plaintiffs believe that resolution of the third issue (the common law claim for intentional infliction of emotional distress under Florida law) could render the first two unnecessary. Accordingly, Plaintiffs address the questions raised by the Court in a different order than that presented in the Minute Order.

I. **Count I may serve as a basis for relief under tort law for all six plaintiffs**.

Plaintiffs understand the Court's Minute Order as questioning whether the Complaint adequately alleges theories of tort liability supporting the claims of the various plaintiffs under the statutory cause of action found in 28 U.S.C. § 1605A(c). The answer is that, even if inartfully plead, Count I may serve as a basis for relief under tort law for all six plaintiffs.

A. **The sufficiency of Count I must be determined by its substance rather than the labels used to define the bases of liability**.

The Supreme Court has held, "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby,* 574 U.S. 10, 11; 135 S.Ct. 346, 190 L.Ed.2d 309 (2014). As the D.C. Circuit explained, *Johnson* makes clear that once a complaint alleges facts that give rise to liability, it need not name or identify the specific legal theory of liability. *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014); see also, *Al-Kharouf v. D.C.*, 498 F. Supp. 3d 79, 85-86 (D.D.C. 2020) (same); *Jones v. D.C.*, No. 16-CV-2405 (DLF), 2019 WL 5690341, at *6 (D.D.C. June 13, 2019) (same). In *Johnson*, the Supreme Court distinguished its holdings in *Bell Atlantic*

2

*Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *Twombly* and *Iqbal* addressed the sufficiency of the *factual* allegations of a complaint. *Johnson*, 574 U.S. at 12. In contrast, *Johnson* held that a complaint need not name the basis of liability; it is sufficient for the complaint to allege facts demonstrating that the plaintiffs are entitled to relief[1]. *Id*. See also, *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418-419 (4th Cir. 2014) (complaint alleging bystander liability was sufficient despite the failure to use the words "bystander liability" in complaint; pleaders are not required to use any "precise or magical words" in their pleadings – rather, courts must look to substance of allegations).

In the instant case, the subheading of Count I reads: "CAUSE OF ACTION FOR DAMAGES UNDER 28 U.S.C. SECTION 1605A(c)." Complaint (ECF 1) at 11. However, the specific allegations within Count I articulate ***facts*** that support traditional claims in tort for each of the plaintiffs[2]. Those claims are fleshed out in the Memorandum of Points and Authorities in Support of the Motion for Entry of Default Judgment (ECF 18-1). The allegations supporting findings of liability for each plaintiff are discussed below.

1. **Christopher Mustard**.

The Complaint alleges that plaintiff, Christopher Mustard was in his residential quarters when the explosion hit. Complaint at ¶ 3. Mr. Mustard was struck by shards of glass causing lacerations throughout his body. *Id*. He was unable to move due to the shock of the blast. *Id*. The

---

[1] The Court in *Johnson* added that the plaintiffs should be "accorded an opportunity" to amend their complaint to explicitly cite the statutory basis for their claims. However, the Court explained that any amendment was merely "for clarification and to ward off further insistence on a punctiliously stated theory of the pleadings." Amendment of the complaint was not otherwise necessary. 574 U.S. at 12.

[2] Count I incorporates the allegations of the Complaint that preceded Count I. See Complaint at ¶ 42.

3

Complaint adds: "As a result of the attack, Mustard suffered from memory loss and post-traumatic stress disorder. To this day, he suffers from nightmares, cannot tolerate loud noises, and has recurring nightmares. He avoids crowed places like movie theaters and has turned down lucrative job offers abroad due to his fear of being in another terrorist attack." *Id*. "Plaintiff, Christopher Mustard, who was present at the time suffered personal injury and great emotional distress as a result of the terrorist explosion. The psychological wounds continue to this day." *Id*. at ¶ 41. These allegations support Mr. Mustard's claim for liability under Section 1605A(c) for battery and intentional infliction of emotional distress/solatium. See Memorandum of Points and Authorities at 11-12. The facts supporting liability under these theories are spelled out in greater detail in the Memorandum of Points and Authorities at 13-14 and in the declaration of Christopher Mustard (ECF 18-8).

    a. **Battery**.

In *Aceto v. Islamic Republic of Iran*, this Court identified the elements necessary to demonstrate the tort of battery under Section 1605A(c): "Battery requires an act "intending to cause a harmful or offensive contact ... or an imminent apprehension of such a contact," and that such a contact in fact "directly or indirectly results." "Harmful contact" causes a "physical impairment of the condition of another's body, or physical pain or illness." *Aceto v. Islamic Republic of Iran*, 2020 U.S. Dist. LEXIS 22084, 2020 WL 619925 at *15 (D.D.C. 2020) (internal citations omitted). In *Aceto*, the Court found that each of the service-member plaintiffs who was in the Khobar Towers complex at the time of the bombing was entitled to damages for battery based upon allegations that they had suffered harmful physical contact as a result of the bombing." *Id*. Mr. Mustard's allegations regarding the harmful physical contact he suffered as a result of the bombing likewise satisfy the elements of a battery claim under Section 1605A(c) and general tort

4

principles. See Complaint at ¶ 3. Furthermore, and as discussed in the Memorandum of Points and Authorities, Mr. Mustard has established through his sworn declaration and corroborating submissions that he is entitled to compensation for battery. See Memorandum of Points and Authorities at 13-14; Declaration of Christopher Mustard and attachments thereto (including his Purple Heart certificate and letter from the Department of Veteran Affairs confirming his 100% disability rating).

    b. **Intentional Infliction of Emotional Distress (IIED) and Solatium**.

In *Aceto*, this Court applied the Restatement (Second) of Torts § 46 definition to determine whether the plaintiffs had established their claims for IIED. 2020 WL 619925 at *15. "One who by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to the plaintiffs is liable for intentional infliction of emotional distress." *Id*. The Court added: "Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Id*. citing, *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). As was the case with the servicemembers in *Aceto*, Mr. Mustard adequately pleaded that he suffered severe emotional and psychological distress as a result of the attack. See Complaint at ¶ 3. Furthermore, and as discussed in the Memorandum of Points and Authorities, Mr. Mustard has established through his sworn declaration and corroborating submissions that he is entitled to compensation for IIED. See Memorandum of Points and Authorities at 13-14; Declaration of Christopher Mustard and attachments thereto (including his Purple Heart certificate and letter from the Department of Veteran Affairs confirming his 100% disability rating).

    2. **Family Members of Injured Servicemembers.**

The remaining plaintiffs – Susanne Ceragioli, Pauline Wilder, William Wilder, Kristene Wilder, and Jeffrey Wilder – are immediate family members of servicemembers who were present

in Saudi Arabia and suffered injuries as a result of the Khobar Towers bombing. The analysis of the family member plaintiffs' claims is similar and they will be discussed together, except where indicated.

    a. **Susanne Ceragioli**.

The Complaint alleges facts demonstrating that Susanne Ceragioli is the older half-sister of Denny Prier, a United States national, among the servicemembers housed at the Khobar Towers Complex at the time of the attack. Complaint at ¶ 4. The Complaint alleges that Denny Prier was physically and emotionally injured in the attack. *Id*. at ¶ 5, citing *Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020). And the Complaint alleges facts demonstrating that Ms. Ceragioli suffered severe mental anguish and extreme emotional pain and suffering as a result of the attack. *Id*. at ¶¶ 5, 8-11, 41, 47.

    b. **The Wilder Family**.

The Complaint alleges facts demonstrating that Pauline, William, Kristene, and Jeffrey Wilder are, respectively, the mother, father, sister, and brother of Jennifer Scheidel, a United States national who was among the servicemembers housed at the Khobar Towers Complex at the time of the attack. Complaint at ¶ 12. The Complaint alleges that Jennifer Scheidel was injured in the attack. *Id*., citing *Aceto v. Islamic Republic of Iran*, 2020 WL 619925 (D.D.C. 2020). And the Complaint alleges facts demonstrating that each of the Wilder Plaintiffs suffered severe mental anguish and extreme emotional pain and suffering as a result of the attack. *Id*. at ¶¶ 13-15 (Pauline), ¶¶ 16-19 (William), ¶¶ 20-24 (Kristene), and ¶¶ 25-28 (Jeffrey); see also id. at ¶¶ 41, 47 (all plaintiffs).

      c. **The family member plaintiffs alleged facts supporting their claims for IIED**.

In *Aceto*, this Court applied the Restatement (Second) of Torts to find that family members of those who were present at the time of the Khobar Towers bombing were entitled to recovery even though they were not direct targets of the bombing if "(1) the defendants' conduct is sufficiently outrageous and intended to inflict severe emotional harm upon a person who is not present and (2) the claimant is a member of a victim's immediate family, or the functional equivalent of an immediate family member." *Aceto*, 2020 WL 619925 at *16 (internal quotation marks and citations omitted); see also, *Akins v. Islamic Republic of Iran*, 332 F.Supp.3d 1, (D.D.C. 2018).

In *Aceto*, this Court has found that Iran's "conduct in materially supporting Saudi Hezbollah was sufficiently outrageous and intended to inflict severe emotional harm upon a person who is not present, such that a victim's immediate family members need not have been at the bombing to recover for their emotional distress. *Aceto*, 2020 WL 619925 at *17. As was the case with the family member plaintiffs in *Aceto*, Ms. Ceragioli and the Wilder family plaintiffs adequately pleaded that they were immediate family members of injured servicemembers and that they suffered severe emotional and psychological distress as a result of the attack. See Complaint at ¶¶ 5, 8-28, 41, 47. Furthermore, and as discussed in the Memorandum of Points and Authorities, Ms. Ceragioli and the Wilder family plaintiffs have established through their sworn declarations that they are is entitled to compensation for IIED based upon the severe emotional distress they each suffered as a result of their respective servicemember relative's injuries in the attack[3].

---

[3] For detailed discussion and evidence of Susanne Ceragioli's severe emotional distress, see Memorandum of Points and Authorities at 18-19; Declaration of Susanne Ceragioli (ECF 18-3). For discussion and evidence of the Wilder plaintiffs' severe emotional distress, see Memorandum of Points and Authorities at 14-17; Declarations of Pauline Wilder (ECF 18-5), Kristene Wilder (ECF 18-6), and Jeffrey Wilder (ECF 18-7).

### d. All Plaintiffs allege facts supporting claims for civil conspiracy.

Finally, the Complaint alleges facts supporting claims for civil conspiracy on behalf of all plaintiffs. Complaint at ¶¶ 30-35, 45. Judges of this Court have repeatedly held that "sponsorship of terrorist activities inherently involves a conspiracy to commit terrorist attacks." See e.g., *Gill*, 249 F. Supp. 3d at 101; *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 21-22 (D.D.C. 2009) (same); *Acosta v. The Islamic Republic of Iran*, 574 F. Supp. 2d 15, 26-27 (D.D.C. 2008) (same); *Bodoff v. Islamic Republic of Iran*, 424 F.Supp.2d 74, 84 (D.D.C.2006) (same); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998) (same). Additionally, courts have previously held Iran liable for the Khobar Towers bombing attack under civil conspiracy. See e.g., *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40 (D.D.C. 2006); Est. of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C. 2006); *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181 (D.D.C. 2008) The extensive support Iran provided to Hizballah, knowing Hizballah's violent policies and activities, demonstrates that the Iran conspired with Hizballah to carry out terrorist activities including the Attack.

### B. **Susanne Ceragioli is a United States national and is therefore entitled to relief pursuant to the statutory cause of action of 28 U.S.C. § 1605A(c)**.

If the Court finds that Ms. Ceragioli is, and has been at all relevant times, a U.S. national, and that she is otherwise entitled to relief under Count I, it need not reach the other issues raised in the Court's December 12, 2023 Minute Order. Those other issues relate to Counts II and III, which were included in the Complaint in an abundance of caution to provide *alternative* grounds for relief for plaintiff Susanne Ceragioli in the event that the Court finds that she was not a United

8

States national[4] entitled to bring her claim under the statutory cause of action of 28 U.S.C. § 1605A(c)[5]. See *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22-23 (D.D.C. 2009) (proceeding only under the statutory claim where alternative common law causes of action were based upon the same injury).

The Memorandum of Points and Authorities explains that despite being born abroad, Ms. Ceragioli has been a U.S. national since her birth because her biological father was a United States citizen who was physically present in the United States or its outlying possessions for a period not less than five years, at least two of which were after attaining the age of fourteen years. See Memorandum of Points and Authorities at 20, citing *See* 8 U.S.C. § 1401(g) and Declaration of Monika Prier (ECF 18-4) at ¶ 8.[6] As a U.S. national, Ms. Ceragioli is eligible for relief under the statutory cause of action of § 1605A(c).

---

[4] Each of the other plaintiffs submitted evidence that they are and have always been US nationals. See Declarations of Pauline Wilder (ECF 18-5) at ¶ 3, Kristene Wilder (ECF 18-6) at ¶ 3, Jeffrey Wilder (ECF 18-7) at ¶3, Christopher Mustard (ECF 18-8) at ¶ 2, and attachments thereto.

[5] As this Court held in *Aceto*, (simply speaking) 1605A(c) does not extend the statutory cause of action to foreign national plaintiffs. However, foreign national plaintiffs may bring their claims under applicable state or foreign law. *Aceto* 2020 WL 619925 at *13 (recognizing the claim of Ms. Ceragioli's German national mother, Monika Prier); see also, *Leibovitch v. Islamic Republic of Iran*, 697 F.3d 561, 572 and n. 6 (7th Cir. 2012).

[6] The Memorandum of Points and Authorities argues in the ***alternative*** that Ms. Ceragioli is a U.S. national because she has owed permanent allegiance to the United States at all times relevant to this lawsuit. See *id*. at 20. The authority cited by Plaintiffs for this proposition has not been explicitly overruled. However, while preparing this supplemental memorandum plaintiffs' counsel discovered that the D.C. Circuit appears to have rejected this alternative means of establishing U.S. national status. See *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9 (D.C. Cir. 2015). For purposes of possible appeal, Plaintiffs do not waive this argument. Plaintiffs rely principally upon 8 U.S.C. § 1401(g) to establish that Ms. Ceragioli is a U.S. national.

II. **If the Court reaches the issues raised under Count II, a choice of law analysis would be required but it would present no conflict between the laws of Florida and those of the District of Columbia**.

If the Court determines that Ms. Ceragioli is not entitled to relief under Count I, the Court must determine whether she may pursue her claim under state law. *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 153-54 (D.D.C. 2011). Courts apply the choice of law rules of the forum state for such questions arising under the Foreign Sovereign Immunities Act. *Oveissi v. Islamic Republic of Iran,* 573 F.3d 835, 840 (D.C. Cir. 2009). "Under District of Columbia choice of law rules, the court must first determine whether a conflict exists between the law of the forum and the law of the alternative jurisdiction. If there is no true conflict, the court should apply the law of the forum." *Owens* 826 F. Supp. 2d at 154, citing *USA Waste of Md., Inc. v. Love,* 954 A.2d 1027, 1032 (D.C. 2008).

Ms. Ceragioli's state law claim for IIED is based alternatively upon the law of Florida (Ms. Ceragioli's domicile) or the law of the District of Columbia (the forum state). Both Florida and the District of Columbia define the contours of the tort of IIED in accordance with the Restatement (Second) of Torts § 46. See *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 41 (D.D.C. 2007), overruled on other grounds as recognized in *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9 (D.C. Cir. 2015). Under the Restatement as applied in both Florida and the District of Columbia, the elements of intentional infliction of emotional distress are met in each state if it can be demonstrated that: (1) the defendant engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the defendant's conduct is the actual and proximate cause of the plaintiff's emotional distress. *Peterson*, 515 F. Supp. 2d at 42.

The *Peterson* court noted that, even among states that applied Section 46 of the Restatement, there are different approaches to the question of whether an IIED claim may be maintained when the defendant's conduct was directed at a third party (such as a close relative of the plaintiff). *Id*. The Restatement provides that only a ***present*** third party may recover for an IIED claim. *Id*. However, Florida has explicitly allowed immediate family members to recover for IIED even if he or she was not present at the time of the outrageous conduct. *Id*. citing *Williams v. City of Minneola,* 575 So.2d 683, 690 (Fla. 5th D.C.A. 1991). At the time of the Peterson decision, the D.C. Court of Appeals had not yet addressed this question. *Peterson*, 515 F. Supp. 2d at 43. Nonetheless, "in light the severity of a terrorist attack, and the obvious range of potential grief and distress that directly results from such a heinous act, and because a terrorist attack-by its nature-is directed not only at the victims but also at the victims' families, Judge Lamberth found that D.C. law would allow an IIED claim to be brought by a family member who was not present at the time of the outrageous conduct. *Id*. at 43-44. More recently, in response to a certified question, the Court of Appeals expressly held that the presence requirement does not apply to family members' claims for IIED where the defendant is a state sponsor of terrorism. *Republic of Sudan v. Owens*, 194 A.3d 38 (D.C. 2018).

Applying the District of Columbia choice of law rules, there is no conflict between Florida law and District of Columbia law regarding the viability of Ms. Ceragioli's IIED claim. Accordingly, the law of the forum applies. *Owens* 826 F. Supp. 2d at 154. Under District of Columbia law, the elements of an IIED claim are identical to those applied under the § 1605A(c) statutory cause of action. See e.g., *Aceto*, 2020 WL 619925 at *15-*16 (applying the same standards to the IIED claim of Ms. Ceragioli's German national mother as to the claims of the U.S. national plaintiffs).

In the event that the Court finds that Florida law applies *and* that Ms. Ceragioli cannot recover damages for IIED under Florida law, then the Court would assess the viability of Count III. But this assessment would be undertaken only after any determination is made as to choice of law.

> III. **The Court has jurisdiction to grant relief under Count III of the Complaint, claiming enforcement of a Florida state law**.

Plaintiffs alleged Count III as an alternative path to relief for Ms. Ceragioli in the event the Court finds that she is not entitled to relief under Counts I or II. If the Court reaches this issue, it should hold that it has jurisdiction to grant relief under Count III, which states a claim for damages under Florida Statute § 772.13 (Civil Remedy for Terrorism or Facilitating or Furthering Terrorism). The D.C. Circuit held in *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 353 (D.C. Cir. 2018) that under the jurisdictional immunity exception of § 1605A(a) foreign nationals may pursue claims under state or foreign law. Plaintiffs are aware of no authority prohibiting plaintiffs from pursuing statutory claims arising under the law (statutory or otherwise) of foreign jurisdictions. Indeed, the *Fraenkel* decision relating to the non-U.S. national plaintiff applied the Israeli civil tort of negligence, which is a statutory claim. *Fraenkel v. Islamic Republic of Iran*, 248 F. Supp. 3d 21, 39 (D.D.C.), *clarified on denial of reconsideration*, 258 F. Supp. 3d 77 (D.D.C. 2017), *rev'd sub nom. on other grounds Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs., et al.*, 892 F.3d 348 (D.C. Cir. 2018) ("The Israeli civil tort of negligence is codified in the Civil Wrongs Ordinance (CWO) at § 35, 2 LSI (New Version) 14–15 (1972)"). Other courts in this district have applied state statutes as a basis for finding Iran liable under the terrorism exception. See e.g., *Dammarell v. Islamic Republic of Iran,* 404 F. Supp. 2d 261 (D.D.C. 2005) (applying wrongful death statutes of Georgia and Virginia, and survival statutes of Florida and Virginia).

These holdings are supported by the language of the FSIA. Section 1606 provides that "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity ... the foreign state shall be liable in the same manner and to the same extent as a private individual in like circumstances." "Thus, where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 n. 11, 622, 103 S. Ct. 2591, 2598, 77 L. Ed. 2d 46 (1983); see also, *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1038 (7th Cir. 2018), quoting 28 U.S.C. § 1606.

The Court also questioned whether Count III would be more appropriately brought and enforced in a Florida court. In fact, it is doubtful whether Ms. Ceragioli could have brought Count III in a Florida court. 28 U.S.C. § 1391 addresses venue generally, and subsection (f) provides the rules of venue for civil actions against a foreign state. Section 1391(f)(4) states that venue is proper in the United States District Court for the District of Columbia for any claim brought against a foreign state or political subdivision thereof. None of the other provisions of Section 1391(f) indicate that venue would be proper in Florida.

## CONCLUSION

For the reasons stated herein and in the plaintiffs' Memorandum of Points and Authorities, the Court should grant their Motion for Default Judgment and to Take Judicial Notice of Evidence in Prior Related Cases.

Dated: January 17, 2023         Respectfully submitted,

By  /s/ Asher Perlin
Asher Perlin (#FL0006)
Law Office of Asher Perlin
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Tel: (786) 687-0404
asher@asherperlin.com